UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| QUINCY MUTUAL FIRE INSURANCE COMPANY, | : : | |
| Plaintiff, | : : | |
| v. | : : | Case No. 3:04-CV-480 (PCD) |
| MICHAEL GRAMEGNA and JOHN DISCENZA, | : | |
| Defendants. | : | |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Now pending are Plaintiff Quincy Mutual Fire Insurance Company's ("Quincy Mutual"), Defendant Michael Gramegna's, and Defendant John Discenza's cross-motions for summary judgment. In this action, Plaintiff Quincy Mutual seeks rescission of an insurance policy it issued to defendant Gramegna (the "insured") for the period July 2, 2002, to July 2, 2003, and renewed for the period July 2, 2003, to July 2, 2004. In two counts, one based on common law and the other on rights found in the insurance policy, Quincy Mutual claims relief based on alleged misrepresentations by the insured in the policy application dated July 1, 2002, as follows:

- a. that he owned a dog or dogs;
- b. that animals were kept on the premises;
- c. that a dog or dogs were kept on the premises;
- d. that the animals or dogs were or that the dog was a Rottweiler;
- e. that the dog or dogs had bitten someone prior to the application date;
- f. that there had been a loss during the five years prior to the date of the application.

(Compl. ¶¶ 28, 36.) The insured allegedly knew that he owned a Rottweiler that was kept on his premises and that had bitten the insured's father, John Gramegna, within five years of the policy application. (Id. ¶¶ 29, 38.) However, the insured's policy application contains the following four questions and the responses thereto:

- a. Are there any animals or exotic pets kept on the premises?
  Response: No.

      b.        Is a dog or any other pet owned or kept on premises?  Breed?
              Response: No.
      c.        Any losses, whether or not paid by insurance, during the last 3 years, at this or at
              any other location?
              Response: No.
      d.        Loss record of last five years.
              Response: None.

(Id. ¶¶ 10-11.)  Plaintiff brought this action claiming that Gramegna's responses to these four questions are material misrepresentations which render the policy void or entitle Plaintiff to rescission of the policy.

Defendant Discenza moved for summary judgment on both counts of the Complaint, and Defendant Gramegna incorporates by reference Discenza's motion.  Defendants contend that there is no evidence of a misrepresentation, factually and/or legally, in the insured's responses to any of the four questions in the policy application, thereby entitling them to judgment.  Although none of the parties briefed arguments pertaining to all four contested questions and responses, to avoid confusion, the Court now reviews the cross-motions with an analysis of all four questions and responses in determining whether Plaintiff or Defendants are entitled to judgment in relation to one or more misrepresentations allegedly made in the policy application.

## I. FACTS

The following facts are derived from the parties' Local Rule 56(a)(1) statements as admitted.  On July 1, 2002, the insured lived in an apartment at 122 Oakland Street, Manchester, CT.  The insured owned a Rottweiler dog which had bitten his father, John Gramegna, in 1999.  The insured was aware of the bite incident at the time, but he did not know until approximately three months prior to July 1, 2002, that in 1999 his father submitted a claim for resulting personal injuries to Travelers Insurance Company, which had written a liability insurance policy on the

insured at his prior residence, and received a settlement of $12,000.

From late 2001 to July 2002, Michael Gramegna had a difficult time obtaining insurance because of his dog. Gramegna temporarily placed the dog with his father at some point prior to July 1, 2002, until the insurance coverage was resolved. The precise date of the placement of the dog with John Gramegna is not reflected in the record, but Defendant Gramegna is firm in his assertion that the dog was with his father on July 1, 2002 when he signed an application for the insurance ultimately issued by Quincy Mutual. According to the record presented, those witnesses in a position to know the status of the dog on July 1, 2002 were aware of the placement with John Gramegna, but their answers to questions not precisely phrased to acquire specific dates do not definitively state the date of the placement with John Gramegna. None of the witnesses asserted that the dog was not with John Gramegna on July 1, 2002, and no evidence presented placed the dog at 122 Oakland Place, Manchester, CT, on July 1, 2002.

In late June or on July 1, 2002, Michael Gramegna contacted Patricia Reis at the National Insurance Agency seeking quotes for a homeowners policy. Reis offered to place him with Quincy Mutual. On July 1, 2002, Reis completed a policy application by asking Michael Gramegna questions over the phone, including whether he had any prior claims or losses, and filling in his responses. On July 1, 2002, Michael Gramegna met with Reis at her office to review and sign the application and pay for the policy. Reis testified at her deposition that she gave Gramegna the policy and that, though she does not recall his signing the third page, she knew of no one else doing so. In reliance on the July 1 application, Quincy Mutual issued a policy to Michael Gramegna for the period July 2, 2002 to July 2, 2003, and subsequently renewed the policy for July 1, 2003 to July 1, 2004.

-3-

The Quincy Mutual underwriting guidelines do not permit the company to insure owners of certain breeds of dogs, including Rottweilers, and if Quincy Mutual had been aware that Michael Gramegna owned a Rottweiler dog it would not have issued the policy, whether or not the dog was kept on the insured premises. Quincy Mutual also would not have issued the policy if the application had disclosed the prior dog bite claim by John Gramegna that resulted in a payment by Michael Gramegna's prior insurance carrier of over $10,000.

Michael Gramegna had also experienced two thefts in the years prior to July 1, 200, one in 1998 and one in 1999. The 1999 incident did not result in a loss to the insurer or the insured.

On or about September 12, 2003, Michael Gramegna's dog bit John Discenza in Michael Gramegna's apartment at 122 Oakland Street, Manchester, CT. Discenza brought suit against Michael Gramegna in Connecticut Superior Court, claiming damages arising out of the dog bite. Michael Gramegna tendered the Discenza lawsuit to Quincy Mutual for a defense and indemnification under the policy. Quincy Mutual issued a reservation of rights letter to Michael Gramegna and agreed to provide a defense to the Discenza action pursuant to a complete reservation of rights, expressly including the right to seek court advice, to rescind the policy, and to withdraw its defense. Quincy Mutual has been defending the Discenza action subject to that reservation.

Quincy Mutual filed an action in this Court seeking a declaratory judgment that Michael Gramegna's Quincy Mutual policies may be rescinded or are void from their inception; that Quincy Mutual has no duty to provide a defense of or indemnification to the insured with respect to the Discenza action or any other matter; and that Quincy Mutual may withdraw from the defense of Michael Gramegna in the Discenza action upon reasonable notice to allow him to find

new counsel. Each of the parties now moves for partial summary judgment. Quincy Mutual contends that Gramegna intentionally included a false statement on his application, thereby entitling Quincy Mutual to rescission and rendering the insurance policy void as a matter of law. Defendants assert that they are entitled to summary judgment because Gramegna did not intentionally answer any question falsely when submitting the application for insurance.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The initial burden falls on the moving party, who is required to "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden shifts to the party opposing summary judgment to set forth "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The non-moving party "may not rely simply on conclusory allegations or speculation to avoid

summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

The same legal standards apply when considering cross-motions for summary judgment. A court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004) (citations omitted); see also Scholastic, Inc. v. Harris, 259 F.3d 73, 81 (2d Cir. 2001). A court must deny both parties' motions for summary judgment if it finds the existence of disputed material facts. Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). Therefore, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. at 121.

## III. DISCUSSION

The parties' arguments focus on the issue of misrepresentation in Gramegna's responses to the cited four questions in his insurance policy appliation. The pending motions will thus be resolved in reference to whether any of the responses constitute actionable misrepresentation. Resolution of the misrepresentation issue as to each of the four questions will determine whether Quincy Mutual is entitled to rescission under both Counts One and Two of the Complaint.

In support of its motion, Plaintiff Quincy Mutual relies on Danbury Insurance Company v. Ginnetti, No. 302CV2097(RNC), 2004 WL 2009281, at *1 (D. Conn. Aug. 5, 2004). However, Ginnetti did not deal solely with the question whether an insurer is entitled to rescission based on a material misrepresentation in the application for insurance. Rather,

Ginnetti held that an insured could not avoid responsibility for an assertedly innocent misrepresentation in an application which he claimed to have signed without reading after an agent had filled in the responses. That is not the issue here, where there is no dispute that a known material misrepresentation in Gramegna's policy application would entitle Quincy Mutual to rescind. See Paul Revere Life Ins. Co. v. Pastena, 52 Conn. App. 318, 323 (1999) ("An insurer has a right to rescind for a material misrepresentation on an insurance application if it is not an innocent misrepresentation, but one 'known by the insured to be false when made.'" (quoting Middlesex Mut. Assurance Co. v. Walsh, 218 Conn. 681, 692 (1991))). Instead, the question on which both cross-motions for summary judgment turns is whether Gramegna's policy application responses were untrue and constitute misrepresentations as a matter of law.

A statement constitutes a misrepresentation if it is other than what the applicant has reason to believe is true. Lewis v. John Hancock Mutual Life Ins. Co., 443 F. Supp. 217, 218 (D. Conn. 1977). "Whether a response to a question in an insurance application is false must be determined in light of the question asked." Middlesex Mut., 218 Conn. at 693 (citing 7 G. COUCH, CYCLOPEDIA OF INSURANCE LAW (2d ed.) § 35:145). If one of Gramegna's application responses is found to be untrue as a matter of law, the underlying facts not being in dispute, it would constitute a material misrepresentation and entitle Quincy Mutual to rescission and judgment as a matter of law. If, on the other hand, none of his responses is found to be untrue, there would have been no material misrepresentation and the insured and the claimant would be entitled to summary judgment. Because Plaintiff's suit seeks affirmative relief of rescission, Quincy Mutual has the burden of proof of a misrepresentation. Therefore, in the face of Defendants' motions which assert the absence of any evidence of a misrepresentation, Quincy

Mutual is obliged to offer evidence in support of its claim, absent which Defendants prevail.

      **A.    "Are there animals or exotic pets kept on the premises?"**

The first application question at issue in this case, Question 3 on the application, reads: "Are there animals or exotic pets kept on the premises?" The response on Gramegna's application was "No." The record reflects the insured's stating that the dog, which he does not dispute owning, was not kept at the insured premises at 122 Oakland Street in Manchester; rather, the dog was kept at his father's residence at the time the policy application was executed. The record reflects imprecision as to the exact dates that the dog was kept at the insured's father's residence. Plaintiff has not offered any evidence to contradict the insured's assertion that his dog was not kept at his residence on July 1, 2002, the date on which the policy application was executed. Plaintiff argues that the lack of precise evidence as to the dates on which the dog was kept at John Gramegna's house creates a question of fact on which to deny Defendants' motions and which supports its own motion that the evidence points to the dog being at Michael Gramegna's premises at the time. However, no question of fact actually exists in the record, which contains a definitive assertion that the dog was kept at John Gramegna's house on July 1, 2002. Therefore, the location of the dog on that date does not raise a genuine issue of material fact by which a reasonable jury could find that the insured's response to Question 3 was false and therefore a material misrepresentation.

      **B.    "Is a dog or any other pet owned or kept on the premises?"**

Question 15 of the policy application asks, "Is a dog or any other pet kept on the premises? Breed?" The response on Gramegna's application to this question was also "No." Defendants argue that the question can be understood to ask the single question reading the

phrase "on the premises" to modify the phrase "is any dog or pet." Accordingly, they argue, though the insured did own a dog, the dog was not on the premises, and the insured's response was not false. As discussed above, the Court cannot conclude that the evidence shows that the dog was on the insured premises on July 1, 2002. The response to Question 15 must therefore be judged on the basis of Defendants' argument that the question is ambiguous and that Gramegna's response can be found truthful if the inquiry as to any dog owned or kept is modified to ask about a dog "on the premises." Plaintiff argues that there is no ambiguity and that the question is clearly phrased to ask two questions: (1) is there a dog or any other pet owned? and (2) is there a dog or other pet kept on the premises? As Plaintiff would have it, the phrases "on the premises" should be regarded to modify only the word "kept."

Existence of an ambiguity is crucial to the resolution of Plaintiff's claim of a misrepresentation in the response to Question 15. The truth of an answer in an insurance application must be determined in light of the question asked, not in reference to extraneous evidence, Middlesex Mut., 218 Conn. at 693, and the language of a policy application will be construed as a layperson would understand it. Cody v. Remington Elec. Shavers, 179 Conn. 494, 497 (1980). If the question is "so framed as to leave room for two constructions, the words used in it should be interpreted most strongly against the insurer." Middlesex Mut., 218 at 693 (quoting Rinaldi v. Prudential Ins. Co., 118 Conn. 419, 423 (1934)). See also O'Brien v. John Hancock Mut. Ins. Co., 143 Conn. 25, 29 (1955); Schulz v. Hartford Fire Ins. Co., 213 Conn. 696, 702 (1990); Roby v. Conn. Gen. Life Ins. Co., 166 Conn. 395 (1974); Marcolini v. Allstate Ins. Co., 160 Conn. 280 (1971); LaBonte v. Fed. Mut. Ins. Co., 159 Conn. 252 (1970).

As phrased, Question 15 cannot be said to ask clearly whether a dog was owned by the

applicant and, separately, whether a dog was kept on the premises. A layperson could reasonably read the question as Defendants argue, that is, asking not merely whether a dog was owned but whether a dog owned was on the premises. Such phrasing is not the epitome of clarity, and the Defendants' interpretation of the question may not be the best reading of the phrasing. However, the Court's function is not to decide how it would read the question but to decide if a layperson could reasonably read the question as Defendants do. An applicant for insurance cannot torture policy words into an ambiguity, but if the words in which the question is phrased could be read in more than one way by a reasonable layperson, then an ambiguity exists. If the applicant answers a question in a manner that is truthful as a response to a reasonable reading of the question, then the Court cannot conclude that the response is an intentional misrepresentation. Here, Plaintiff has not convincingly demonstrated that Question 15 can only be read to ask solely if the applicant owned a dog; thus, it has failed to show that the single response offered by Gramegna was false. As his dog was not on the premises on July 1, 2002, it could be reasonably said, as stated in the response to Question 15, that no owned dog was on the premises. The fact that the Connecticut dog bit statute, Conn. Gen. Stat. § 22-357, creates an absolute liability for an owned dog's bite, wherever it occurred, does not control the question of a layperson's reasonable interpretation of Question 15: while the dog bite statute would lead an insurer to be interested in the ownership of any dog, a layperson cannot be expected to know the full import of the statute and could therefore reasonably read the question as Defendants suggest and not as the insurer intended it to be read. The Court therefore cannot conclude that Gramegna's response to Question 15 contained a misrepresentation as a matter of law.

    C.    **"Any losses, whether paid or not paid by insurance during the last three**

**years, at this or any other location?"**

The third question at issue asks the applicant whether he had "any losses, whether or not paid by insurance during the last three years, at this or any other location?" Gramegna's response to this question was "No." Quincy Mutual claims that this response is a misrepresentation because within three years prior to July 1, 2002, the insured's father was bitten by his dog at the insured premises.[1] Gramegna's dog had bitten John Gramegna within three years of the policy application, and, without then informing the insured, John Gramegna had presented a claim for the resulting injury to the insured's then insurer, Travelers, which settled the claim for $12,000. Michael Gramegna concedes that he knew of the dog bite incident but asserts that he only learned of the claim shortly before the Quincy Mutual application. Neither John Gramegna, his lawyer, or Travelers had contacted him about the claim. He now argues that his response to the Quincy Mutual application question does not contain a misrepresentation because it calls for "any losses," not for any claims, and he did not sustain any loss, even if a claim was brought under his insurance policy.

In arguing their positions, both Gramegna and Quincy Mutual rely on language in the actual insurance policy. However, is it the application language that controls, not the policy. When Gramegna answered the application question, he was not reliant on the policy, and it is therefore extraneous to the wording of the application. As for the "loss" language of the application, there is a difference between a claim and a loss. Dictionary meanings of the two words are not synonymous, and a reasonable layperson could differentiate between a 'claim' and

---

[1] As mentioned above, a theft had also occurred on Gramegna's property in 1999, within three years of July 1, 2002, but no proof of loss was filed and it did not result in a loss to either the insured or the insurer.

a 'loss' and reasonably not disclose a claim in response to a question about losses. A loss could be a first-person loss, such as a loss of property or personal injury, with resulting loss incurred, such as medical expenses. A claim, on the other hand, could be made by a third-party or by the insured. While a claim could arise from a loss, a loss does not necessarily result in a claim. A reasonable insurance applicant could assume that a loss that was not covered by insurance and that resulted in no claim being made was of no interest to an insurer; similarly, an applicant could reasonably assume that a claim that might not have been paid and thus did not result in a loss to the insurer was of interest to it. The words 'loss' and 'claim' have different legal import as well: an insurer's obligation to pay a first-party loss sustained by an insured differs from its obligation to defend and indemnify the insured in the face of a third-party claim. See Amoco Oil Co. v. Liberty Auto & Elec. Co., 262 Conn. 142, 147 (2002). An insurer is obliged to respond to a claim asserted against the insured by a third-party who suffered a loss, but the insured need not sustain a loss when such a claim is made. Therefore, taking the words in question at their reasonable meaning, Gramegna could have reasonably believed that his father's claim against his former insurer did not constitute a "loss," and therefore his response to the loss question is not false and does not constitute a material misrepresentation which entitles Quincy Mutual to rescission.

### D. "Loss Record of Past Five Years"

The fourth question from the policy application at issue inquires about the applicant's "loss record of the past five years," to which Gramegna responded, "None." As discussed above, the 1999 dog bite incident could reasonably be regarded as a claim, not as a loss which required listing in this answer, and the 1999 theft did not result in a loss to either the insured or the

insurer. The 1998 theft on Gramegna's property, however, did result in a loss which he failed to include in his policy application response. Defendants concede that his response to this fourth question is therefore partially untrue, but they argue that the question asking for losses applied to the insured property but not necessarily to the insured personally. Their interpretation of the language is supported by the testimony of an experienced insurance agent, James Carter, but Plaintiff has countered that testimony with the view of another experienced insurance agent, Patricia Reis. The Defendants' interpretation of "loss" is too strained to adopt here as a matter of law; it is reasonable to read the term "loss" as referring both to a property loss and to a fiscal loss sustained by the applicant. Thu, given Carter's and Reis's competing testimony, a question of fact is presented as to whether Michael Gramegna misrepresented the fact as to the requested loss history by responding "None" to the loss record question. The materiality of such a misrepresentation also remains a question of fact that should be left to a jury.

Although Plaintiff does allege Gramegna's failure to disclose a loss within five years of the application in its Complaint (see Compl. ¶¶ 11.b., 28), its rescission claim focuses on Gramegna's dog ownership and the 1999 dog bite. (Id. ¶¶ 30-33, 36, 38-39.) Because Plaintiff did not respond to Defendants' argument for summary judgment in relation to Gramegna's non-disclosure of the 1998 theft, any claim for rescission based on any misrepresentation in the non-disclosure of the 1998 theft is hereby waived. See Scherer v. The Equitable Life Assur. Soc. of the U.S., No. 06-2965-CV, 2008 WL 190520, at *1 (2d Cir. Jan. 23, 2008) ("plaintiff has waived any challenge to summary judgment on her § 349 claim by failing to address this claim in her brief").

For the foregoing reasons, Defendants are entitled to summary judgment with respect to

-13-

the claims of misrepresentation in the responses to the first three questions in the application at issue but not as to the fourth question. The response to the fourth question regarding Gramegna's loss record of the previous five years presents a question of fact as to its materiality, an issue not argued by Defendants in their motions. The question that remains for trial is whether the response to the fourth question, which contains a misrepresentation as to the 1998 theft on Gramegna's property, is sufficiently material as to entitle Plaintiff to rescission of the insurance policy, that is, whether Plaintiff can prove that if it knew of the 1998 theft and resulting loss, it would not have issued the insurance policy to Gramegna.

## IV. CONCLUSION

Plaintiff's Motion for Summary Judgment [Doc. No. 38] is **denied.** Defendants Gramegna's and Discenza's Motions for Summary Judgment [Doc. Nos. 22, 35] are **granted in part** as to the claims of misrepresentation in Gramegna's responses to questions one, two, and three, but are **denied in part** as to the claim of misrepresentation in the response to question four.

SO ORDERED.

Dated at New Haven, Connecticut, this 5th day of March, 2008.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court